**SO ORDERED.**

**SIGNED this 31 day of March, 2011.**

_____
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| BIEDERMANN MANUFACTURING INDUSTRIES, INC., | 10-09207-8-SWH |
| DEBTOR | |

### ORDER DETERMINING ISSUE RELATING TO DEBTOR'S MOTION FOR AUTHORITY TO USE CASH COLLATERAL

The matter before the court is a discrete issue relating to the debtor's motion for authority to use cash collateral. A hearing on that motion was held on November 12, 2010, and an additional hearing was held on November 29, 2010. Interim orders granting the debtor's motion were entered on November 17, 2010, and December 10, 2010; however, the November 17, 2010, order reserved for later determination the issue of whether the debtor's accounts receivable are property of the estate. This order constitutes the court's final determination of that issue, and the court answers that question in the affirmative.

The debtor, Biedermann Manufacturing Industries, Inc. ("Biedermann"), is a Connecticut corporation engaged since 1983 in the business of manufacturing precision screw machine products.

The debtor operates in Thomaston, Connecticut; Raleigh, North Carolina; and Westminister, South Carolina. The debtor sells its products to equipment manufacturers throughout the United States and internationally.

The debtor entered into a $900,000 term loan and a $150,000 line of credit with Branch Banking and Trust Company ("BB&T) on October 14, 2008, and granted BB&T a security interest in all existing and after-acquired accounts, inventory, equipment, general intangibles and the proceeds thereof. A UCC Financing Statement was filed with the Connecticut Secretary of State on October 31, 2008.

On October 21, 2010, BB&T notified the debtor that it was in default of the loans. As of that date, the outstanding balance on the term loan was $670,124.72, and the outstanding balance on the credit line was $154,039.59. BB&T demanded payment in full by October 26, 2010. The debtor did not pay, and BB&T commenced a state court action against it on November 2, 2010.

Between November 2 and November 5, 2010, BB&T levied on the debtor's accounts by notifying debtor's customers that all future payments owed by the customers to the debtor should instead be made directly to BB&T. On November 8, 2010, after the account debtors' receipt of BB&T's notices demanding payment, the debtor filed a petition initiating this chapter 11 case. As of the petition date, no customers had paid any amounts owed on the accounts to BB&T instead of to the debtor.

On November 9, 2010, the debtor filed a motion for authority to use cash collateral. BB&T filed an objection to the motion in which it alleged that the accounts were not property of the estate because of its pre-petition levy, and thus could not be used by the debtor pursuant to 11 U.S.C. § 363. After a preliminary hearing, an interim order authorizing use of cash collateral was entered

2

on November 17, 2010. In that order, the court noted the parties' agreement to defer the issue of whether the accounts are property of the debtor's estate without prejudice to the rights and arguments of either party. The debtor values its accounts on its schedules at $313,070.

The debtor maintains that the proceeds of its accounts receivable constitute property of its estate under 11 U.S.C. § 541, which can be recovered from BB&T pursuant to § 542 and used in its operations pursuant to § 363, as long as BB&T's interests in the accounts are adequately protected.

## **OVERVIEW**

The parties agree that BB&T holds a valid security interest in the accounts of the debtor pursuant to the loan documents. There also is no dispute that BB&T levied upon the accounts pre-petition pursuant to state law when the notices sent by BB&T to debtor's customers, directing the customers to make payment to BB&T, were received by those customers.[1]  N.C. Gen. Stat. § 25-9-607. They disagree as to the effect of that levy. BB&T argues that the pre-petition levy transferred ownership of the accounts to it. The debtor maintains that it held an interest in the accounts on the petition date which entitles it to the use of those accounts pursuant to § 363.

The Bankruptcy Code defines property of the estate broadly to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Applicable non-bankruptcy law determines whether a debtor holds a legal or equitable interest in property. Butner v. U.S., 440 U.S. 48 (1979). Then, federal law determines whether that interest in property constitutes property of the estate. In re Bryn Athyn Investors, 69 B.R. 452, 456 (Bankr. E.D.N.C. 1987).

---

[1] Although the parties do not discuss the issue in their respective pleadings, avoidance of the levy as a preferential transfer may be an alternative route to including the accounts in the estate. See In re Contractors Equip. Supply Co., 861 F.2d 241 (9th Cir. 1988).

BB&T concedes that the debtor retained certain rights of redemption and entitlement to any surplus in the accounts following a levy. Cross Elec. Co., Inc. v. U.S., 664 F.2d 1218 (4th Cir. 1981), abrogated by U.S. v. Whiting Pools, Inc., 462 U.S. 198 (1983); In re Eisenbarger, 160 B.R. 542 (Bankr. E.D. Va. 1993). But, BB&T contends, that those rights have "no value" in this case in light of the fact that the amount of the accounts was significantly less than the amount of the debt, and therefore should not be considered property of the estate qualified for "use" pursuant to § 363. BB&T relies upon the Fourth Circuit's opinion in Cross Electric for that analysis and conclusion.

The debtor makes several arguments in opposition. First, and foremost, the debtor argues that BB&T's levy did not transfer ownership of the accounts. Secondly, the debtor states, notwithstanding BB&T's pre-petition levy on the accounts, 11 U.S.C. § 541 includes in its definition property recovered by the estate by turnover pursuant to § 542. Since § 542 is not limited by the "value" of the property to be recovered, it would require the return of any property to the estate that can be used, sold or leased by the debtor pursuant to § 363. As long as BB&T's interests can be adequately protected, the debtor contends, § 363 allows it to use the accounts. Lastly, the debtor argues that its conceded right of redemption in the accounts "has value" because that right of redemption can be realized through a plan of reorganization, or the sale of other property of the estate.

## DISCUSSION

Because BB&T primarily relies on Cross Electric, the court turns first to BB&T's arguments with respect to that case. The court notes at the outset that it is of the view that Cross Electric has been abrogated by the Supreme Circuit's decision in Whiting Pools and, even if Cross Electric had not been abrogated, it would be distinguishable.

In Cross Electric, the IRS levied upon a $5,672.65 accounts receivable pre-petition as part of its effort to collect a $43,297.15 debt. Upon the filing of its chapter 11 petition, the debtor sought an order pursuant to 11 U.S.C. § 542 requiring the levied account to be paid to it. The IRS objected, maintaining that in light of its pre-petition levy, the account never became property of the estate. The bankruptcy court allowed the debtor's motion and required "dissolution" of the levy. That ruling was affirmed by the district court. Cross Electric, 664 F.2d at 1219-20.

The Fourth Circuit reversed, finding that although the debtor retained a right of redemption, notwithstanding the IRS levy pursuant to the IRS Code, the trustee was "in no position to exercise any of the limited rights it may have to redeem the property levied upon," and therefore the bankruptcy court had no authority to dissolve the levy and the IRS was entitled to collect the account. Id. at 1221. It is noteworthy that the Fourth Circuit was careful to limit its ruling to "the facts of this case." Id. at 1219.

Nearly two years later, the United States Supreme Court decided United States v. Whiting Pools, Inc., 462 U.S. 198 (1983). Before the Court was an appeal from the Second Circuit on the issue of whether property seized by a creditor prior to the filing of a chapter 11 petition is property of the estate. The court expressly granted certiorari to resolve the conflict between the Second and Fourth Circuits created by the decision in the Cross Electric case. Whiting Pools, 462 U.S. at 202.

In Whiting Pools, the IRS had seized various tangible personal property of the debtor pre-petition in enforcement of its tax lien. The debt owed to the IRS was $92,000 and the value of the seized property was $35,000 (liquidation value) and $162,876 (going concern value). Upon the chapter 11 filing, the IRS sought stay relief to pursue its tax lien sale and the debtor counterclaimed for turnover of the property. The bankruptcy court denied relief from the stay and allowed turnover

5

conditioned upon adequate protection payments to the IRS. The district court reversed, but the Second Circuit reversed the district court, specifically acknowledging that "its ruling was contrary to that reached by the United States Court of Appeals for the Fourth Circuit in Cross Electric Co. v. United States." Whiting Pools. 462 U.S. at 202.

The Supreme Court first determined that property of the estate under § 541 was not limited to the interest of the debtor in property at the time of the filing of the petition, but included in the estate "any property made available to the estate by other provisions of the Bankruptcy Code." Id. at 205. Section 542, the Court concluded, brings into the estate property in which the debtor did not have a possessory interest on the petition date, including property repossessed by a secured creditor. Id. at 206. The protections afforded to a secured creditor by possession are replaced upon the filing of a bankruptcy by the right of adequate protection. Id. at 207. "Any other interpretation of § 542 would deprive the bankruptcy estate of assets and property essential to its rehabilitation effort and thereby would frustrate the congressional purpose behind the reorganization provisions." Id. at 208.

This court finds that the decision in Cross Electric was abrogated or, at a minimum, effectively modified by the Supreme Court's ruling in Whiting Pools. In essence, in affirming the Second Circuit, the Court held that the interest a creditor has in property levied upon is still just a lien. Levy is a provisional remedy that does not determine a creditor's rights in property, but merely brings it into the creditor's possession. In the case of tangible personal property, ownership is transferred only upon sale to a bona fide purchaser. Id. at 211.

Whiting Pools dealt with tangible personal property and not cash equivalents like accounts,[2] as is at stake in the case at bar. BB&T argues that the distinction warrants a different result. However, the Supreme Court set out expressly to resolve a conflict in the circuits, and if it felt that such distinction was of consequence, it certainly would have so stated. It did not, and therefore this court will not recognize a distinction where none has been drawn. See In re Challenge Air Int'l, Inc., 952 F.2d 384, 387 (11th Cir. 1992); In re Boutilier, 196 B.R. 323 (Bankr. W.D. Va. 1996); SPS Technologies, Inc. v. Baker Material Handling Corp., 153 B.R. 148 (E.D. Pa. 1993). In light of the Supreme Court's ruling in Whiting Pools, this court is not bound by the decision in Cross Electric. But see In re Eisenbarger, 160 B.R. 542 (Bankr. E.D. Va.1993).

Even if the court were so bound, Cross Electric is distinguishable. BB&T's pre-petition levy on the debtor's accounts was a proper attempt by BB&T to enforce its security interest. That effort did not result in the collection by BB&T of any accounts, and therefore did not result in any credit against the debtor's obligation to BB&T. The accounts remained in "constructive possession" of BB&T on the petition date, subject to its lien, much like the unsold tangible personal property seized by the IRS pre-petition in Whiting Pools. See In re AIC Indus., Inc., 83 B.R. 774 (Bankr. D. Colo. 1988). On the petition date, BB&T had nothing more than a lien on property of the estate. Ownership had not transferred to it, and the accounts remained the property of the estate. As property of the estate subject to the lien of a secured party, the debtor is authorized to use the

---

[2] Some courts have debated whether an account is a cash equivalent because it can be sold at a discount. In re McLaughlin, 139 B.R. 9 (N.D. Ohio 1991). This court has some question as to whether a "cash equivalent" can ever be subject to collection risks, thus bringing accounts receivable, especially those of a chapter 11 debtor, outside the definition.

7

accounts if adequate protection is afforded to BB&T. 11 U.S.C. § 363; see also In re Contractors Equip. Supply Co., 861 F.2d 241 (9th Cir. 1988).

Finally, the Cross Electric court recognized that the redemption rights of the debtor in the accounts would constitute property of the estate, but determined that the debtor could not exercise those rights under the circumstances of that case. Cross Electric, 664 F.2d at 1220-21; see Boutilier, 196 B.R. at 328 n.7. The prospect of a determination of whether an interest constitutes property of the estate turning on the monetary value of that interest does concern the court. However, the court would point out that the debtor in this case may very well be able to exercise a right of redemption in the accounts through either a sale of other property of the estate, or through the terms of a plan of reorganization. The use of the accounts in question may form the basis of treatment for one or more classes of creditors in the debtor's plan of reorganization. Boutilier, 196 B.R. at 328 n.9.

There is significant evidence that BB&T is adequately protected by the equity cushion it enjoys in the aggregate value of its collateral. Preventing the debtor from using the accounts, which form only one portion of BB&T's collateral, would be inconsistent with the rehabilitation goals of chapter 11 and is neither required nor substantially supported by controlling precedent.

## CONCLUSION

For the foregoing reasons, the remaining issue in connection with the debtor's motion for authority to use cash collateral – whether the debtor's accounts receivable are property of the estate – is resolved in the affirmative. Any customer who received BB&T's pre-petition levy notice is hereby directed to resume all payments on outstanding accounts to the debtor.

**SO ORDERED.**

**END OF DOCUMENT**